By the Court.—Curtis, J.
The plaintiff sues as assignee of John Johnson to recover damages for injuries to a horse of the latter, claimed to have occurred from a collision on defendant’s road when crossing the Isthmus of Panama.
The defendants put in issue the value of the horse,. *375 and alleged that the horse died of the glanders, and was sick at the time of the collision, and that .his death was not occasioned 'by any injury received while the horse was on the road. There was evidence that the plaintiff’s assignee paid the fare of this horse from líew York to San Francisco, except the railroad charge, which he paid at Aspinwall; that the collision occurred by reason of the intoxication of one of the defendant’s engineers ; that the horse was thrown down and injured while in the car; and various estimates were given of its value at San Francisco, one as high as $5,000.
There was testimony as to the value of horses on the Isthmus, and as to what kind of horses were' raised or sold there.
There was conflicting testimony as to the condition and symptoms of the horse, both before and after the collision, and as to what caused his death.
There were twenty-live requests by the defendant’s counsel to charge. They were substantially charged by the court as requested, except such as were properly submitted to the jury as questions of fact.
The defendant’s counsel excepted to such portions of the charge as stated in substance that if there was no horse like this bought and sold upon the isthmus, and if there were no such horses there, that then there could not have been a market value there, in the -sense in which market value is applied to property. The language of the court was, after stating in substance that if no horse like this was bought or sold upon the isthmus, and if no such horses were there, “then the horse would not ‘ ‘ have a market value there in the sense that we apply “the words ‘market value’ to articles of property “which are subjects of traffic and from time to time “ actually bought and sold in a particular place.” This seems to be a just observation by the court, especially in view of the testimony that this horse was a thoroughbred stallion.
*376 The defendant’s counsel excepted to the portion of the charge instructing the jury if they should find that there were no horses like this on the isthmus—none like him in appearance, form, and quality—and that no such horses had been bought and sold there, then in determining his fair actual value at that place, they might take into consideration evidence of his actual value at San Francisco, if the evidence satisfied them that he had a certain market value there, in determining’ his actual market value at Panama; that is to say, for the purpose of fixing, but not enhancing, such market value at Panama, taking into consideration the hazards and risks of transportation, and the expenses of transporting from Panama to San Francisco, and in view of these and all other facts affecting the question they might determine his fair market value at Panama at the time he was injured and in the condition he then was.
This is the reasonable way of arriving at- the solution of the question of value, and accords with the views expressed by the General' Term in this case reported in 3 Bos. 7.
The court declined the request of' the defendant’s counsel, made after the charge, to instruct the jury that it was not proved that such a horse had been or could be bought or sold in San Francisco, or had a market value there.
The defendant’s counsel excepted, but in view of the testimony on this subject the court necessarily left it as a question of fact to be passed upon by the jury. The two other requests on the defendant’s part after the charge, were to have matters charged that had been already in substance charged, and the exceptions in that respect were not well taken.
It is claimed by the defendants that the verdict for damages is excessive, and not sustained by the evidence. There was considerable testimony in reference to the value of the horse. Various estimates were made by *377 witnesses from zero to five thousand dollars. The whole subject was fairly and justly placed before the jury. The complaint was amended on the trial so as to -• allow plaintiff to claim interest. It was within the province of the jury to assess the damages, and there appears to be no good reason, after looking over the testimony, to disturb the verdict as excessive and unwarranted by the testimony. More than eighteen years have elapsed since the alleged injury to the horse, and the jury may have considered the matter of interest on the original damages.
There were several exceptions taken by the defendant’s counsel to rulings of the court as to the admission of evidence. One of these exceptions was to allowing Johnson to testify of what breed or stock the horse was. He testified he was of the “ Sir Archies breed.” It appears by his testimony he had been for several years in the business of raising and selling horses; that he had on hand over two hundred horses, with almost as many colts in addition, and that he had dealt in American horses at San Francisco. His testimony discloses knowledge of the subject, and the court properly allowed him to answer the question. The defendants were not prejudiced by it, for the court, considering it merely as the expression of an opinion, instructed the jury that the horse’s pedigree, blood, history, etc., were not established by positive evidence.
A similar exception was taken to the admission of the testimony of the stallion’s groom as to the breed or stock of the horse, but it appears from his testimony he has had experience while in the service of men engaged in buying and selling horses, and while living with professional farmers. Persons who have acquired knowledge of the breeds of horses, from raising and dealing in horses, are competent to testify on the subject.
The first mate of the steamer was asked by the defendant’s counsel if the horse was dangerously ill on *378 the voyage. He had testified he was sick, but it did not appear that he had any knowledge or experience of the diseases of horses to enable him to testify as an expert in respect to the character of the illness. ■ The witness answered that he thought he was. The court properly struck out his answer, and the defendants excepted. This witness was asked if he saw any alteration in the horse from the time he was out three or four days up to the time he landed in Aspinwall. He answered he thought “he was improving.” The defendant’s counsel excepted, claiming that the witness was not shown to be an expert, but he had testified on his direct examination that the horse was sick on the voyage, and on the cross-examination it was proper to ask him what alteration he saw in his condition. He was not asked for an opinion upon a subject requiring skill which he was not shown to possess, but as to what would be ordinarily apparent to the officer of any vessel whose duties placed him in charge of the deck, and who had any experience or responsibility in the transportation of this description of freight.
There were other exceptions to- the rulings of the court in respect to the introduction of testimony, in which the court ruled upon the questions of value in accordance with the views of the General Term at the first hearing of this cause on appeal. In examining the exceptions in respect to the admission of testimony, there do not appear to be any that furnish reasons for reversing the judgment and granting a new trial.
The judgment and order appealed from are affirmed, with costs.